IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MELBA MONTALVO, | § | CV. NO. 5:13-CV-997-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| AEROTEK, INC. | § | |
| | § | |
| Defendant. | § | |
| _____ | § | |

ORDER (1) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT;
(2) GRANTING DEFENDANT'S MOTION TO STRIKE JURY DEMAND

On November 12, 2014, the Court held a hearing on the Motion for

Summary Judgment and Motion to Strike Jury Demand filed by Defendant Aerotek,

Inc. ("Aerotek" or "Defendant") ("MSJ," Dkt. # 16; "Mot. Strike," Dkt # 17).  Lecia

L. Chaney, Esq., represented Plaintiff Melba Montalvo ("Montalvo" or "Plaintiff");

Christine E. Reinhard, Esq., represented Aerotek.  After careful consideration of the

memoranda in support of and in opposition to the motions, and in light of the

parties' arguments at the hearing, the Court, for the reasons that follow, **DENIES**

Defendant's Motion for Summary Judgment (Dkt. # 16) and **GRANTS** Defendant's

Motion to Strike Jury Demand (Dkt. # 17).

1

## BACKGROUND

In May 1997, Montalvo began working as an administrative assistant for the recruiting and staffing agency, Aerotek.  ("MSJ Resp.," Dkt. # 22, "Montalvo Aff.," Ex. 2 ("TPA Straughn Aff.") ¶ 1; MSJ Resp., Ex. A ¶ 1.)  During her fifteen years of employment at Aerotek, Montalvo climbed the corporate ladder to a position as Customer Service Supervisor ("CSS") in the Central Region. (Montalvo Aff. ¶ 2; "Tydings Dep.," MSJ Resp., Ex. 2 at 190:25, 191:17.)  In 2012, she was forty-five years old.  (See Tydings Dep. at 190:25.)

In September 2012, Montalvo attended a company meeting in Fort Worth.  (Montalvo Aff. ¶ 7.)  At that meeting, Mike Hansen ("Hansen"), the Central Region's Regional Vice President, delivered a presentation, during which he said, "We are going to get rid of the dinosaurs of the company."[1]  ("Montalvo Dep.," MSJ Resp., Ex. 1 at 182:4–23; "Rodriguez Aff.," MSJ Resp., Ex. 13 at 1; "Tydings Dep.," MSJ Resp., Ex. 2 at 46:21–47:7.)  Upon returning the San Antonio office, Kevin Healy ("Healy"), the Director of Business Operations in the San Antonio office, held a meeting to recap the Fort Worth meeting for the employees who had

---

[1] Hansen and fellow co-workers deny the exact phrasing of this statement.  ("Hansen Dep.," MSJ Resp., Ex. 14, 74:16–75:15 ("I was talking about our technology and that we have to stay abrupt and  on top of all technology changes . . . we never want to become dinosaurs and lose our position with the folks throughout the organization.")  However, at the summary judgment stage, the Court must view the evidence in the light most favorable to the plaintiff.  Kevin M. Ehringer Enters. v. McData Servs. Corp., 646 F.3d 321, 326 (5th Cir. 2011).

been unable to attend.  (Montalvo Aff. ¶ 3; Montalvo Dep. at 202:12–20.)  During

that discussion, Healy repeated Hansen's dinosaur comment to the group.

(Montalvo Dep. 202:12–20.)  Sometime shortly thereafter, Montalvo, who was the

oldest CSS in the Central Region, discussed her perception that Hansen's remark

was inappropriate with other colleagues.  (Montalvo Dep. 195:5–22.)

On September 17, 2012, Tracy LeClaire, Aerotek's Employee

Relations Specialist, provided Kiley Cochran ("Cochran"), Montalvo's direct

supervisor, with a template for a Final Written Warning letter prepared for

Montalvo.  (MSJ Resp., Ex. 19.)  On October 2, 2012, Montalvo received the "Final

Written Warning" regarding unsatisfactory performance.  (MSJ Resp., Ex. 11.)  The

letter cited various performance issues, which the letter stated "ha[d] been brought

to [her] attention verbally on multiple occasions by [her] supervisor, Kiley

Cochran."  (Id. at 1.)  Montalvo disputes that she ever received any oral or written

warnings about her performance prior to this incident.  ("Aero Montalvo Dep.,"

MSJ, Ex. 3 at 236:14–16.)

On October 4, 2012, Montalvo reported for the first time Hansen's

comment to Tanya Tydings ("Tydings"), who was Aerotek's Human Resources

Manager for the Central Region.  (Tydings Dep. at 19:5–15, 69:8–12; Aero

Montalvo Dep. at 237:2–5, 240:4–7.)  Tydings immediately investigated the

complaint by reaching out to two human resources specialists that were present at

3

the September meeting, as well as Healy Cochran.[2]  (Tydings Dep. 69:18–70:13.)
All parties present confirmed that Hansen had made a remark about dinosaurs, but
stated that the comment did not allude to terminating employees based on age and
instead related to technological change at the company.  (MSJ Resp., Ex. 12 at 4.)
Tydings conveyed these findings to Montalvo and suggested that she speak
individually with Cochran, Healy, and Hansen so that they could reassure her of the
meaning of the comment.  (Id.)

      Meanwhile, throughout October 2012, Montalvo and Cochran engaged
in discussions about the performance of Marisol Hernandez ("Hernandez"), who
Montalvo directly supervised.  (See MSJ Resp., Exs. 20–22.)  Marisol was having
ongoing issues with the Drug and Background Audit.  (MSJ Resp., Ex. 20.)
Through email, Cochran suggested that Montalvo could either write-up Hernandez
or terminate her.  (MSJ Resp., Ex. 21.)  At the recommendation of Tydings,
Montalvo prepared a written warning, which she delivered to Hernandez on
November 2, 2012.  (MSJ Resp., Ex. 22; MSJ Resp., Ex. 23 at 1.)  In response to
Hernandez's question about whether she would be fired, Montalvo told her that "this
could lead up to . . . termination of your employment," as the written warning stated.

---

[2] Tydings testified during her deposition that she never reached out to Hansen to
investigate the dinosaur comment.  (Tydings Dep. at 70:12–13).  However,
Aerotek's Statement of Position in response to the EEOC Charge, which Tydings
prepared, states that Tydings spoke to Hansen during her investigation of
Montalvo's complaint.  (MSJ Resp., Ex. 12 at 4.)

(Montalvo Dep. at 265:25–266:2.)

On the same day, a coworker named Steven called Cochran to tell her that Hernandez was crying because Montalvo had showed Hernandez Cochran's email that suggested termination and because Montalvo suggested that Hernandez get an attorney and find loopholes to avoid termination.[3]  (Tydings Dep. at 79:8–17; Cochran Dep. at 122:14–22.)  Although Montalvo and Hernandez denied the specifics of that conversation, Montalvo was terminated that day.  (MSJ Resp., Ex. 17.)

On November 12, 2012, Montalvo filed an EEOC Charge of Discrimination, which alleged that she had been discriminated against because of her age and retaliated against because of her report of the discriminatory remark. (MSJ, Ex. 20.)

On September 26, 2013, Montalvo filed a petition in Texas's 73rd Judicial District, Bexar County, naming Aerotek as the sole defendant.  (Dkt. # 1, Ex. 5 at 3.)  She asserted claims of age discrimination and retaliation under the Texas Commission on Human Rights Act ("TCHRA"), Texas Labor Code § 21.051. (Id.)  Montalvo sought damages for loss of earnings, loss of earning capacity, mental anguish, and attorney's fees.  (Id. at 8.)  On November 1, 2013, Aerotek removed

---

[3] Although Montalvo does not dispute that Steven made this call, both she and Hernandez dispute that the events that Steven described took place. (MSJ Resp., Ex. 23; Montalvo Dep. at  265:18–19, 268:3–25.)

the case to this Court, invoking the Court's diversity jurisdiction.  (Dkt. # 1.)

On July 25, 2014, Aerotek filed a Motion for Summary Judgment (Dkt. # 16), as well as a Motion to Strike Jury Demand (Dkt. # 17).  Montalvo submitted a response to the Motion to Strike on August 1, 2014 (Dkt. # 20), to which Aerotek filed a reply on August 8, 2014 (Dkt. # 21).  Montalvo submitted a response to the Motion for Summary Judgment on August 8, 2014 (Dkt. # 22), to which Aerotek filed a reply on August 16, 2014 (Dkt. # 26).

## LEGAL STANDARD

A movant is entitled to summary judgment upon showing that "there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a); see also Meadaa v. K.A.P. Enterprises, L.L.C., 756 F.3d 875, 880 (5th Cir. 2014).  A dispute is only genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party meets this burden, the nonmoving party must come forward with specific facts that establish the existence of a genuine issue for trial.  Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc., 738 F.3d 703, 706 (5th Cir. 2013) (quoting Allen v. Rapides Parish Sch. Bd., 204 F.3d 619, 621 (5th Cir. 2000)).  "Where the record taken as a whole could not lead a rational trier of fact to find for

the non-moving party, there is no 'genuine issue for trial.'"  Hillman v. Loga, 697

F.3d 299, 302 (5th Cir. 2012) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith

Radio Corp., 475 U.S. 574, 587 (1986)).

   In deciding whether a fact issue has been created, "the court must draw

all reasonable inferences in favor of the nonmoving party, and it may not make

credibility determinations or weigh the evidence."  Kevin M. Ehringer Enters. v.

McData Servs. Corp., 646 F.3d 321, 326 (5th Cir. 2011) (quoting Reeves v.

Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).  However,

"[u]nsubstantiated assertions, improbable inferences, and unsupported speculation

are not sufficient to defeat a motion for summary judgment."  United States v.

Renda Marine, Inc., 667 F.3d 651, 655 (5th Cir. 2012) (quoting Brown v. City of

Hous., 337 F.3d 539, 541 (5th Cir. 2003)).

<u>DISCUSSION</u>

I. <u>Defendant's Motion for Summary Judgment</u>

   The Court first considers the arguments in Aerotek's Motion for

Summary Judgment.  In its motion, Aerotek contends that Montalvo's TCHRA

claims fail because: (1) there is no direct evidence of age discrimination; (2) even if

Montalvo could make out a prima facie case under the McDonnell Douglas

burden-shifting framework for circumstantial evidence of discrimination, Aerotek

had a legitimate, non-discriminatory reason for Montalvo's discharge that Montalvo

7

cannot rebut as pretext; and (3) Montalvo cannot establish her prima facie case of retaliation.  (MSJ 3–20.)  The Court considers each argument in turn.

At the outset, the Court notes that, because TCHRA was modeled after federal civil rights law and is intended to coordinate state law with federal law in employment discrimination cases, the Texas Supreme Court interprets TCHRA in light of federal law and the cases interpreting that law.  In re United Servs. Auto. Ass'n, 307 S.W.3d 299, 308 (Tex. 2010).  Accordingly, unless the Texas Supreme Court has held otherwise, courts look equally to federal and state law in evaluating claims under TCHRA.

A.    Age Discrimination

A plaintiff seeking to prove age discrimination under TCHRA can proceed under one of two frameworks, based on whether there is direct evidence of the discrimination.  See Quantum Chem. Corp v. Toennies, 47 S.W.3d 473, 476 (Tex. 2001).  If the plaintiff can present direct evidence of "discriminatory animus," the burden then shifts to the employer to show that "legitimate reasons would have led to the same decision regardless of any discriminatory motives."  Id.

Alternatively, if the plaintiff does not have direct evidence of discriminatory animus, she can demonstrate a prima facie case by showing that she was "(1) a member of the protected class under TCHRA, (2) qualified for . . . her employment position, (3) terminated by the employer, and (4) replaced by someone

younger." <u>Mission Consol. Indep. Sch. Dist. v. Garcia</u>, 372 S.W.3d 629, 642 (Tex. 2012). Upon making the showing, the burden shifts to the employer to "articulate some legitimate, non-discriminatory reason" for the termination. <u>Quantum Chem.</u>, 47 S.W.3d at 477. The burden then shifts back to the plaintiff to show that the stated reason was in fact a pretext for discrimination. <u>Id.</u>

Aerotek argues that Montalvo's claim fails under either framework because there is no direct evidence of discrimination and because Montalvo is unable to rebut Aerotek's legitimate, non-discriminatory reason for terminating her with evidence of pretext. (MSJ at 3–17.) Montalvo counters that there is direct evidence of age discrimination and, even if there is not, she has rebutted Aerotek's legitimate, non-discriminatory reason for termination with evidence of pretext. (MSJ Resp. at 3–10.)

1.    <u>Direct Evidence of Discrimination</u>

To show direct evidence of discrimination arising out of remarks, the remarks must be "'1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the complained-of adverse employment decision; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.' Comments that do not meet these criteria are considered 'stray remarks,' and standing alone, are insufficient to defeat summary judgment." <u>Jackson v. Cal-Western Pack'g Corp.</u>,

602 F.3d 374, 380 (5th Cir. 2010) (quoting <u>Rubinstein v. Adm'rs of Tulane Educ.</u> <u>Fund</u>, 218 F.3d 392, 400–01 (5th Cir. 2000)); <u>see also</u> <u>Evans v. City of Hous.</u>, 246 F.3d 344, 349 (holding that claims of age discrimination under ADEA and TCHRA "are all evaluated within the same analytical framework"); <u>Murphy v. Uncle Ben's,</u> <u>Inc.</u>, 168 F.3d 734, 739 (5th Cir. 1999) ("The purpose of TCHRA is to coordinate and conform with federal law under Title VII and ADEA.").

Montalvo relies on the statement "[w]e are going to get rid of the dinosaurs in the company" as direct evidence of discrimination.  (MSJ Resp. at 4.) Aerotek contends that Montalvo cannot establish the first, second, or fourth element of this test and, accordingly, no direct evidence of age discrimination exists.  (MSJ at 5–7.)

### a.     Whether the Comment Was Age-Related

Aerotek relies on the Fifth Circuit case <u>Torrech-Hernandez v. General</u> <u>Electric Co.</u>, 519 F.3d 41 (1st Cir. 2008) to argue that the term "dinosaur" is not per se age-related and, given the context, Hansen's remark was not age-related.  (MSJ 5–6.)  Montalvo argues that the context in which the comments were made in <u>Torrech-Hernandez</u> was different than the context here, where they were facially age-related.  (MSJ Resp. at 5.)

"In order for an age-based comment to be probative of an employer's discriminatory intent, it must be direct and unambiguous, allowing a reasonable jury

to conclude without any inferences or presumptions that age was a determinative factor in the decision to terminate the employee." Wyvill v. United Cos. Life Ins. Co., 212 F.3d 296, 304 (5th Cir. 2000). In this context, "direct evidence includes any statement or document which shows on its face that an improper criterion served as a basis—not necessarily the sole basis, but a basis—for the adverse employment action." Fabela v. Socorro Indep. Sch. Dist., 329 F.3d 409, 415 (5th Cir. 2003). In applying this test, a court can look to the common dictionary definition of the terms used to assess the directness and ambiguity of the statement. See Ford v. Potter, No. 3:07-CV-1039-D, 2008 WL 4791511, at *2 (N.D. Tex. Nov. 4, 2008) (relying on dictionary definitions of "youthful" and "vibrant" in determining whether the remarks were age-related).

Neither the Fifth Circuit nor its district courts have directly addressed whether a dinosaur comment is age-related under the direct evidence test. The Western District of Texas once addressed the question in Lewis v. Home Depot U.S.A., Inc., No. A-06-CA-058-LY, 2007 WL 1100422, at *6 (W.D. Tex. Apr. 10, 2007) under the circumstantial evidence test for discriminatory remarks, which is less stringent than the direct evidence test. Compare Jackson v. Cal-W. Packaging Corp., 602 F.3d 374, 380 (5th Cir. 2010) (describing the four-part test for direct evidence of discriminatory remarks), with Laxton v. Gap Inc., 333 F.3d 572, 583 (5th Cir. 2003) (holding that, to amount to circumstantial evidence of

11

discrimination, a remark must "first, demonstrate discriminatory animus and, second, be made by a person primarily responsible for the adverse employment action or by a person with influence or leverage over the formal decisionmaker"). There, the court found that comments including "[t]he dinosaurs are going away" and "[t]he dinosaurs are going extinct" were enough to satisfy the test as to whether discriminatory remarks were circumstantial evidence of discrimination.  Id. at *6. In so finding, the court stated that "referring to people as dinosaurs, as [the employee] admitted he had done, at the very least hints of discriminatory animus toward older workers[.]"  Id.

        In Torrech-Hernandez, which Aerotek points to, the First Circuit addressed the same question, again under the circumstantial evidence standard. There, the First Circuit held that an employee's reference to himself and other employees as "dinosaurs," in the context of other statements about age and lack of energy, as well as age and speed, was a stray remark that did not show evidence of age-related animus or bias.  519 F.3d at 54–55.  In so holding, the court relied on Merriam-Webster's definition of dinosaur, which read "impractically large, out-of-date, or obsolete" and which the court found "comports entirely with [the employee's] explanation, corroborated by witnesses, that his statement referred to the out-dated practices and machines still used in the Puerto Rico factories."  Id. at 55.  In a footnote, the court noted that "District courts outside of the First Circuit

have addressed similar statements when assessing whether the term 'dinosaur' is evidence of pretext," but concluded that "[t]here is little uniformity among the courts, however, and the conclusions reached largely are based on the context in which the statements were made." Id. at 55 n.8.

Even viewing the evidence in the light most favorable to Montalvo, the statement "We are going to get rid of the dinosaurs of the company" is not so "direct and unambiguous" that a reasonable jury could "conclude without any inferences or presumptions that age was a determinative factor." Wyvill, 212 F.3d at 304. A jury would have to draw an inference from the comment to conclude that the comment was age-related. Accordingly, the statement does not satisfy the direct evidence test, although such a finding does not preclude consideration of the statement as circumstantial evidence, as the Court discusses in supra, Part B.

           b.    Whether the Remarks Were Related to the Employment Decision at Issue

Moreover, even if the statement was age-related, it was not related to the employment decision at issue. The comment was made to a large group in a context wholly unrelated to Montalvo's termination. Since the Court must infer that the dinosaur comment was related to the ultimate decision to fire Montalvo, the comment is not direct evidence of discrimination. See, e.g., Haglund v. St. Francis Episcopal Day Sch., 8 F. Supp. 3d 860, 865–66 (S.D. Tex. 2014) (finding that

comments during a faculty meeting about the expectations for faculty's use of new technology, and encouragement to retire if faculty members were unwilling to adopt that technology, were not related to the decision not to renew a <u>particular</u> teacher's contract).

Accordingly, although the dinosaur comment could give rise to an inference of discrimination, it does not constitute direct evidence of discrimination.

### 2.   Circumstantial Evidence of Discrimination

Aerotek contends that, even if Montalvo was able to support a prima facie showing of age discrimination through circumstantial evidence, her claim nevertheless fails because she cannot rebut Aerotek's legitimate, non-discriminatory reason for the termination with evidence of pretext.  (MSJ at 8–18.)  Because both parties assume, for the sake of this motion, that Montalvo can make out a prima facie case of age discrimination under the <u>McDonnell Douglas</u> framework for circumstantial evidence of discrimination, the Court assumes the same without ruling on the issue.

### a.   Legitimate, Non-Discriminatory Reason

Aerotek contends that Montalvo was terminated for breaching her obligations as a supervisor and under Aerotek's confidentiality agreement in the manner that she handled Hernandez's discipline, after she had received verbal counseling and a written warning for unsatisfactory performance and nevertheless

14

failed to improve.  (MSJ at 8.)

    According to Cochran, immediately after becoming Montalvo's supervisor in May 2012, she became aware of Montalvo's unsatisfactory performance and began to verbally counsel Montalvo.  (MSJ, Ex. 7 ¶ 5.)  In June 2012, Cochran verbally counseled Montalvo about unprofessional comments that she made during a presentation, as well as her nonresponsiveness to certain audits and her failure to keep track of folders containing personal information.  (Id.)

    In August 2012, Cochran learned that Montalvo was not attending leadership meetings, she was not training and developing the Vendor on Premise community, and there were many data entry errors and issues in the department that Montalvo oversaw.  (Id. ¶ 6.)  Accordingly, Cochran took Montalvo to lunch to discuss the issues with her performance—an event that Cochran considered a verbal warning.  (Id. ¶ 7.)  On September 5, 2012, Cochran received a copy of an email from an Aerotek employee, who had made an anonymous complaint to Hansen about the way that Montalvo and her team treated him, which Cochran felt confirmed her observations about Montalvo's sub-par leadership qualities.  (Id. ¶ 8.)  On September 11, 2012, Cochran received a report from a Human Resources Specialist about Montalvo's failure, as a supervisor, to appropriately handle a harassment complaint.  (Id. ¶ 9.)

    Because Cochran felt that her verbal warnings were not resulting in any

15

change in Montalvo's behavior, she decided, in consultation with Tydings, to issue

Montalvo a written warning.  (Id. ¶ 10.)  On September 17, 2012, she received the

warning template from human resources, which she issued on October 2, 2012.  (Id.

¶ 12.)

        Montalvo's performance did not improve following the written warning

and Cochran continued to learn of concerns with Montalvo's performance.  (Id.

¶ 16).  In fact, Montalvo testified that she did not make any efforts to improve her

performance between October and November 2012:

> Q.  Did you take any sort of efforts in order to improve your
> employment – your performance between October and November
> 2012?
> A.  No.  I was doing my job, and that was it.
> Q.  Well, so you didn't take – you didn't take, in your mind, any
> extraordinary steps or any additional steps between October 2nd and
> November 2nd in order to improve your performance.
> Ms. Chaney:  Objection.  Calls for speculation.
> The Witness: No.  I – I didn't because I didn't think I did anything
> wrong.  My thing was if I had performance issues, why didn't
> anybody speak to me about it before this time?

(MSJ, Ex. 3 at 244:15–245:8.)

        Accordingly, Defendant contends that, when Cochran and Tydings

learned of Montalvo's leadership failure in handling Hernandez's discipline, they

concluded that termination was appropriate.

        b.    <u>Pretext</u>

        Although TCHRA and ADEA employ the same analytical framework,

they "involve a different causation inquiry at the [pretext] stage of the McDonnell

Douglas analysis." Reed v. Neopost USA, Inc., 701 F.3d 434, 440 (5th Cir. 2012).

While ADEA requires proof that age was the "but for" cause of the adverse

employment action at the pretext stage of the analysis, TCHRA only requires proof

that age was a "motivating factor" in the decision.[4] Id. (quoting Quantum Chem.,

47 S.W.3d at 480).  However, the Texas Supreme Court has made clear that, in

demonstrating pretext, the plaintiff bears the burden to show that the proffered

reason is "false, and that discrimination was the real reason": merely showing that

the reason is false is insufficient to meet the plaintiff's burden.  Wal-Mart Stores,

Inc. v. Canchola, 121 S.W.3d 735, 741 (Tex. 2003) (quoting St. Mary's Honor Ctr.

v. Hicks, 509 U.S. 502, 515 (1993)); see also Baker Hughes Oilfield Operations,

Inc. v. Williams, 360 S.W.3d 15, 23 (Tex. App.—Hous. [1st] 2011) ("even if the

evidence could be sufficient to support an implied finding that the reasons cited by

---

[4] Defendant argues that Montalvo cannot succeed on a mixed-motive claim because she has no direct evidence of discrimination.  (MSJ Reply at 8 n.5 (citing Quantum Chem., 47 S.W.3d at 476–77; Reber v. Bell Helicopter Textron, Inc., 248 S.W.3d 853, 857 (Tex. App.—Ft. Worth 2008).)  Although it is true that the Texas Supreme Court calls direct evidence cases "mixed-motive cases" and circumstantial evidence cases "pretext cases," Quantum Chemical makes clear that the "motivating factor" standard of causation is the standard of causation for assessing pretext in a TCHRA unlawful employment practice regardless of the type of evidence upon which the plaintiff relies.  47 S.W.3d at 479–80; see also Reed, 701 F.3d at 440; Pineda v. United Parcel Serv., Inc., 360 F.3d 483, 487–89 (5th Cir. 2004) (finding that Quantum Chemical's holding regarding the causation standard was limited to TCHRA cases alleging discrimination based on race, color, sex, national origin, religion, age, or disability).

17

the employer for the employee's termination are false, the employee still bears 'the ultimate burden' to prove that the employer discriminated against him because of [the protected characteristic]").

Montalvo offers several reasons that Aerotek's legitimate, non-discriminatory reason for her termination is pretextual and that age was a motivating factor for her termination.  (MSJ Resp. at 6–10.)  First, she argues that Aerotek's workforce statistics show an underrepresentation of employees over the age of forty.  (Id. at 9–10.)  Second, she argues that she presented evidence to show that the Hernandez incident did not occur as Aerotek describes.  (Id. at 7.)  Third, she argues that her performance evaluations from 2009–2012 lack any mention of poor performance and that none of the verbal counseling that Aerotek refers to is documented.  (Id. at 10.)

### i.  Workforce Statistics

Montalvo argues that the employee rosters produced by Aerotek during discovery show "a gross under-representation of employees in the protected class," with only one out of seventy-six employees in the Central Region's CSS roster older than Montalvo and only three older than forty (including Montalvo).  (MSJ Resp. at 9.)  Additionally, Montalvo argues that the statistics evidence "an extremely young workforce," where ninety-seven of Aerotek's 133 employees in the Central Region's Field Support Group (73%) were between the ages of twenty and thirty.

18

(Id.)  She contends that this evidence "demonstrate[s] a corporate mentality that is in lockstep with Hansen's dinosaur comment."  (Id.)  Aerotek counters that statistical evidence is insufficient to show discriminatory motive in an individual disparate treatment case.  (MSJ Reply at 8–9.)

A plaintiff alleging discrimination under a disparate treatment theory can present statistics as part of a pretext showing.  See Quantum Chem., 47 S.W.3d at 481–82 (finding statistical evidence that older engineers had higher turnover than younger counterparts, in combination with past satisfactory performance evaluation, were probative to show pretext).  However, "more than statistics are usually necessary to rebut an employer's strong showing of a legitimate, non-discriminatory reason for discharging a particular employee."  Bauer v. Albemarle Corp., 169 F.3d 962, 968 (5th Cir. 1999); see also Walther v. Lone Star Gas Co., 977 F.2d 161, 162 (5th Cir. 1992) ("We have recognized that gross statistical disparities resulting from a reduction in force or similar evidence may be probative of discriminatory intent, motive or purpose.  Such statistics might in an unusual case provide adequate circumstantial evidence that an individual employee was discharged as part of a larger pattern of layoffs targeting older employees.  This is not to say that such statistics are enough to rebut a valid, non-discriminatory reason for discharging a particular employee.").

To be probative, statistics cannot be devoid of context; the surrounding

19

facts and circumstances dictate the value of the statistical information.  Compare
Cheatham v. Allstate Ins. Co., 465 F.3d 578, 583 (5th Cir. 2006) (finding that
statistics were not probative because they were devoid of context, where the
statistics showed that pre-law suit, only two out of ten new hires were over forty and
post-law suit, four out of eleven new hires were over forty), and Conlay v. Baylor
Coll. of Med., 688 F. Supp. 2d 586, 595 (S.D. Tex. 2010) (finding that statistical
evidence that no females had been hired for any of seven openings in the prior five
years was insufficient to show pretext because the plaintiff "offered no proof of the
make-up of the selection pool, beyond the bare assumption that an unspecified
number of females in Baylor's clinical departments were qualified to be chairs"),
with Quantum Chem., 47 S.W.3d at 482 (finding that statistical evidence that older
engineers had a much higher rate of turnover than younger engineers was probative
in conjunction with other evidence of pretext).

   Montalvo provides two categories of statistics in support of her pretext
showing: the ages of all of the employees in her CSS position throughout the
company, and the ages of all of the employees in the Central Region's Field Support
Group.  (Resp., Ex. A ¶¶ 14–15.)  However, both sets of statistics are devoid of
context.  With regard to the CSS data, it is undisputed that the position was one level
above entry-level.  Without information about the ages of individuals applying for
the CSS role or information about the ages of those promoted and/or terminated

from that role, the ages of the cohort provide no probative value as to pretext.

Similarly, the ages of the employees in the Central Region's Field Support Group

are not probative without context.  According to Montalvo's factual statement, the

Field Support Group consisted of Customer Service Associations, On-Premise

Administrators, and Administrative Assistants.  (Id., Ex. A ¶¶ 2, 4.)  At the hearing,

Aerotek noted that this cohort is made up of relatively low-level positions.  Without

information about the ages of individuals promoted and/or terminated from this

cohort, the Court cannot make any meaningful judgment about the probative value

of the statistics.[5]

In sum, the statistics provide no information as to a pattern of

terminations that Montalvo was a part of, nor do they establish anything with regard

to her in particular, other than that there were not many people over the age of 40 in

the particular positions represented by the statistics.  Without any additional context

for these statistics, they are not probative as to pretext in her particular case.

ii.    Montalvo's Performance History and the Hernandez
        Incident

Additionally, Montalvo rebuts Aerotek's reliance on the Hernandez

_____

[5] The Court notes that this is not one of the "rare" situations where raw data tells the
Court something meaningful.  If, for example, the statistics showed that only a small
percentage of the entire company was over the age of 40, the low number, on its
own, might serve some probative value as to pretext.  However, this is not the type
of data that Montalvo provides, and the data that she does provide requires some
context to create probative value.

incident by presenting evidence to show that the Hernandez incident did not occur

as Aerotek described. (MSJ Resp. at 7.) Montalvo further contends that, to the

extent Aerotek honestly believed that Montalvo engaged in the behavior alleged,

that belief was a result of an inappropriate investigation. (Id. at 8.) Finally,

Montalvo argues that her performance evaluations from 2009–2012 show high

performance and that she did not receive the warnings Cochran testifies about, as

evidenced by the lack of documentation of those sessions in her employee file.

(MSJ Resp. at 10.)

Aerotek responds that, even if Montalvo disagrees with the

investigation into the Hernandez incident, Aerotek had a good faith and reasonable

basis for believing that Montalvo engaged in inappropriate conduct because of the

initial report and the interview responses of Montalvo and Hernandez. ("MSJ

Reply," Dkt. # 26 at 7.) Additionally, Aerotek argues that Montalvo's positive

performance evaluations from past supervisors do not undermine Cochran's

evaluation of Montalvo's performance after she became Montalvo's supervisor in

May 2012. (MSJ at 11–12.) In support, Aerotek points to two cases from the Third

and Tenth Circuits that hold that past performance evaluations that show good

performance are insufficient, on their own, to make a showing of pretext. (MSJ at

11 (citing Roberts v. Int'l Bus. Machines Corp., 733 F.3d 1306, 1309 (10th Cir.

2013); Billet v. CIGNA Corp., 940 F.2d 812, 826 (3d Cir. 1991), overruled in part

on other grounds by St. Mary's Honor Ctr., 509 U.S. 502).)

"The issue at the pretext stage is whether [the employer's] reason, even if incorrect, was the real reason for [the employee's] termination." Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 899 (5th Cir. 2002); accord Canchola, 121 S.W.3d at 741. Accordingly, evidence of past performance can, in certain circumstances, be used as evidence to rebut an employer's legitimate, non-discriminatory reason for termination as pretext. See Quantum Chem., 47 S.W.3d at 481–82 (finding past satisfactory performance evaluations, in combination with statistical evidence that older engineers had higher turnover than younger counterparts, was enough to show pretext); see also Atkinson v. Denton Pub. Co., 84 F.3d 144, 149 (5th Cir. 1996) (finding that a lack of negative performance evaluations or warnings about performance and positive verbal feedback within a month of termination, coupled with other evidence of pretext, was sufficient to rebut the employer's reason for termination that plaintiff was fired for poor job performance). But see Machinchick v. PB Power, Inc., 398 F.3d 345, 354–55 (5th Cir. 2005) (finding that lack of any verbal or written warnings, paired with verbal compliments on work, were insufficient to rebut the proffered termination reason that the plaintiff failed to adapt to the company's new marketing plan).

"In cases in which an employer discharges an employee based on the complaint of another employee, the issue is not the truth or falsity of the allegation,

but 'whether the employer reasonably believed the employee's allegation and acted

on it in good faith.'"  Jackson v. Cal-W. Packaging Corp., 602 F.3d 374, 379 (5th

Cir. 2010); accord Chandler v. CSC Applied Techs., LLC, 376 S.W.3d 802, 818

(Tex. App.—Hous. [1st] 2012), review denied.  This is because "[m]anagement does

not have to make proper decisions, only non-discriminatory ones."  Bryant v.

Compass Grp. USA Inc., 413 F.3d 471, 477–78 (5th Cir. 2005); accord Chandler,

376 S.W.3d at 818.

      Alone, "a dispute in the evidence concerning . . . job performance does

not provide a sufficient basis for a reasonable factfinder" to find that the proffered

termination reason is pretextual.  Little v. Republic Ref. Co., 924 F.2d 93, 97 (5th

Cir. 1991); see also Reed v. Neopost USA, Inc., 701 F.3d 434, 440 n.4 (5th Cir.

2012) ("Reed's denial of wrongdoing, standing alone, is insufficient to create a fact

issue").  However, a dispute in the evidence, combined with other evidence about

the decision's discriminatory motivation, can be enough to show pretext.  See Ion v.

Chevron USA, Inc., 731 F.3d 379, 393–94 (5th Cir. 2013).

      In Jackson, which Aeroteks points to in support of its argument, the

Court found that the plaintiff had failed to rebut the employer's legitimate,

non-discriminatory reason for his termination: that the company believed that he

was violating its sexual harassment policy.  602 F.3d 374, 379 (5th Cir. 2010).  In so

holding, the Court noted that the company's conclusion arose out of evidence from

several employees, as well as an internal and external investigation, and the only evidence that Jackson presented in rebuttal was his own affidavit that he did not behave inappropriately.  Id.; see also LeMaire v. La. Dep't of Transp. & Dev., 480 F.3d 383, 391 (5th Cir. 2007) (finding that the plaintiff's mere dispute of the underlying facts to argue that the employer made the wrong decision in terminating him, standing alone, was insufficient to show pretext in the retaliation context); Canchola, 121 S.W.3d at 740 (finding that the plaintiff's disagreement with the quality of the investigation into the harassment complaint was insufficient to show pretext without other evidence showing that the termination was motivated by disability).

The Court subsequently distinguished Jackson in Ion Chevron, where the Court found that, for summary judgment purposes, the plaintiff succeeded in rebutting the employer's legitimate, non-discriminatory reason for his termination: that the termination was based on the plaintiff's unexcused absences and poor performance.  731 F.3d at 392–93.  In so finding, the Court noted that the plaintiff did not rely "solely on his own statements denying [the company's] allegations," but additionally presented an email from the General Manager with suspect statements and highlighted the temporal proximity between the time that email was sent and when the plaintiff was terminated.  Id. at 394; see also Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 409 (5th Cir. 1999) (finding that plaintiff's dispute of

the facts cited for her termination, in combination with the suspicious timing of her termination and other evidence of pretext, was sufficient to rebut the legitimate, non-discriminatory reason in the retaliation context for summary judgment purposes).

In addition to Montalvo's own disagreement with the characterization of her performance, she presents an affidavit from Hernandez, which attests that Montalvo never showed her the email from Cochran, as well as performance evaluations from 2009–2012, which rate Montalvo as meeting or exceeding expectations in every category of performance.  (MSJ Resp., Ex. 7; id., Ex. 23.) Montalvo also presents evidence that her termination occurred within two months of Hansen's dinosaur comment.[6]  (MSJ Resp. at 5.)

Hernandez's testimony that Montalvo never showed her the email from Cochran is not probative as to pretext.  What actually occurred is not at issue. Instead, the issue is whether the employer reasonably believed Steven's complaint and acted in good faith.  Aerotek contends that when Tydings and Cochran investigated the incident, Montalvo said that she didn't show Hernandez the email, but that Hernandez may have seen it if she looked at her computer.  (Cochran Dep. At 124:9–16; Tydings Dep. at 180:20–181:12.)  Tydings considered this response

---

[6] The statistical evidence that Montalvo presents is not probative of pretext, as discussed above.

suspicious and because she didn't believe her, she and Cochran concluded that Montalvo's action was the final straw in a continuing course of inadequate conduct and termination was the appropriate course of action.  (Tydings Dep. at 181:6–8, 184:10–17.)  Given Montalvo's history of inadequate conduct, it was reasonable for Tydings and Cochran to believe Steven's complaint.  There is no evidence that their response was in bad faith.  Accordingly, Hernandez's testimony does not help resolve the pretext issue.

Nor are the performance evaluations probative as to pretext.  Cochran did not become the Regional Field Manager for the Central Region until May 2012 and, as such, she did not complete the mid-year 2012 evaluation for Montalvo. (Cochran Dep. at 23:1–14.)  Instead, Leigh Belt Coursey conducted the mid-year 2012 performance evaluation, which was issued sometime after June 2012.  (MSJ Resp., Ex. 7.)  Evidence as to a previous supervisor's evaluation of performance is not probative as to Cochran's perception of Montalvo's performance, which is the issue here.  Accordingly, the performance evaluations do not help to resolve the pretext question.

Therefore, the only evidence that Montalvo can bring to support a showing of pretext is the dinosaur comment,[7] its temporal proximity to her

---

[7] Although no party makes argument on this issue, the dinosaur comment is probative of pretext.  The test for whether a comment can be probative of

termination, and her personal disagreement with the characterization of her

---

circumstantial evidence of discrimination at the pretext stage is less stringent than the test for whether a comment is direct evidence of discrimination:  "The remark must, first, demonstrate discriminatory animus and, second, be made by a person primarily responsible for the adverse employment action or by a person with influence or leverage over the formal decisionmaker." Laxton v. Gap Inc., 333 F.3d 572, 583 (5th Cir. 2003); see also Russell v. McKinney Hosp. Venture, 235 F.3d 219, 225 (5th Cir. 2000) (finding that remarks, which did not meet the four-part test for direct evidence of discrimination, could nevertheless serve as circumstantial evidence of discrimination).

Although Hansen's comment was not so direct and unambiguous that a jury could conclude that it was age-related without any inference, the reference to dinosaurs "at the very least hints of discriminatory animus toward older workers." See Lewis, 2007 WL 1100422, at *8.

Additionally, Hansen, who initially made the remark, had leverage over Healy (his subordinate).  In terms of supervisory authority, the evidence in the record establishes the following: (1) Montalvo's direct supervisor was Cochran; (2) Healy's direct supervisor was Hansen; and (3) neither Cochran nor Tydings directly reported to Healy or Hansen.

On the day of the termination, both Hansen and Healy were in the San Antonio office.  Hansen was in town for a one or two night trip.  (MSJ, Ex. 107:11–18.)  Hansen testified that he was not informed about Montalvo's pending termination until Healy was driving him to the airport.  (Id. at 105:23–106:16.) Hansen also testified that he could not have had an opinion about Montalvo's termination because he was not aware of the cause of the termination.  (Id. at 106:7–16.)

The factual record is unclear as to the individuals involved in the termination decision.  However, taking the evidence in the light most favorable to Montalvo, "Mr. Healy, Ms. Cochran, and Ms. Tydings agreed that Ms. Montalvo's actions were inappropriate and in light of her recent Written Warning and continued unsatisfactory work performance with no improvements, they agreed to terminate Ms. Montalvo that afternoon."  (MSJ Resp., Ex. 12 at 5.)

Because Hansen was Healy's direct supervisor, he had influence over Healy, who—taking the evidence in the light most favorable to the plaintiff—was involved in executing the employment action.

Accordingly, the dinosaur comment can be probative of pretext at the summary judgment stage.

performance.  Although this evidence is not substantial, it is in line with precedent

finding sufficient evidence of pretext to avoid summary judgment.  See Ion

Chevron, 731 F.3d at 392–93; Shackelford, 190 F.3d at 409.  The evidence raises a

question of fact as to whether the reason proffered by Aerotek is false and whether

Aerotek was in fact motivated by a discriminatory animus.  See Little v. Dep't of

Justice, 177 S.W.3d 624, 632 (Tex. App.—Hous. [1st Dist.] 2005) (noting that a

plaintiff's prima facie case, combined with evidence showing the proffered

non-discriminatory reason is false, can be sufficient to meet the burden).

Accordingly, the Court **DENIES** Aerotek's Motion for Summary Judgment with

regard to the age discrimination claim.

> B.    Retaliation

Aerotek also contends that Montalvo cannot succeed on a claim that

she was discharged in retaliation for her complaint about Hansen's dinosaur

comment because (1) there is no direct or circumstantial evidence that establishes

the requisite causal connection between the report and Montalvo's termination; and

(2) regardless, Montalvo cannot rebut Aerotek's legitimate, non-retaliatory reason

for her termination.  (MSJ at 18.)  Montalvo counters that (1) the timing between the

report and the termination is sufficient to infer the allegation; and (2) the same

evidence set forth in her discrimination claim also establishes that the

non-retaliatory reason for termination is pretext.  (MSJ Resp. at 11.)

29

Under TCHRA, it is unlawful for an employer to retaliate "against a person who . . . (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing." City of Waco v. Lopez, 259 S.W.3d 147, 150 (Tex. 2008).  To demonstrate a prima facie case of retaliation under TCHRA, a plaintiff must show that (1) she is engaged in a protected activity; 2) an adverse employment action occurred; and 3) a causal link existed between the protected activity and the adverse action.  Pineda, 360 F.3d at 487.  Upon making such a showing, the burden shifts to the employer to proffer a legitimate, non-retaliatory reason for the adverse employment action.  Id.  Just like in the discrimination context, the burden then shifts back to the plaintiff to show that the proffered reason is a pretext for retaliation.  Id.

Because neither party disputes that Montalvo can show the first two elements of the prima face case, the Court analyzes only whether Montalvo can establish the third element of her prima facie case and, if so, whether she can rebut Aerotek's legitimate, non-retaliatory reason for termination.

### 1.   Whether a Causal Link Existed

The final hurdle in demonstrating a prima facie case of retaliation is showing that there was a causal link between the protected action and the adverse employment action.  "In order to establish the causal link between the protected

conduct and the illegal employment action as required by the prima facie case, the evidence must show that the employer's decision to terminate was based in part on knowledge of the employee's protected activity." <u>Sherrod</u>, 132 F.3d at 1122. However, "the 'causal link' required in prong three of the prima facie case for retaliation is not as stringent as the 'but for' standard." <u>Raggs v. Miss. Power & Light Co.</u>, 278 F.3d 463, 471 (5th Cir. 2002). For prima facie purposes, "[c]lose timing between an employee's protected activity and an adverse action against [her] may provide the 'causal connection' required to make out a prima facie case of retaliation." <u>Evans v. City of Hous.</u>, 246 F.3d 344, 354 (5th Cir. 2001).

In the case at hand, Montalvo's termination followed the report of her complaint by only one month. This is sufficient to establish a causal connection for the purposes of Montalvo's prima facie case of retaliation. <u>See</u> <u>Evans</u>, 246 F.3d at 354 (noting that a time lapse of up to four months between the protected activity and the adverse employment action was sufficient to show causality for the prima facie case).

      2.    <u>Whether Aerotek's Proffered Non-Retaliatory Reason for Termination is Pretext</u>

As its legitimate, non-retaliatory reason for termination, Aerotek argues that it terminated Montalvo because of her poor performance, which culminated in the Hernandez incident—the same reason argued in rebuttal of Montalvo's

31

discrimination claim.  (MSJ at 18–20.)  For the same reasons argued with regard to discrimination, Montalvo argues that the proffered justification is pretext for discrimination.  (MSJ Resp. at 11.)

As discussed above, Montalvo has carried her burden in showing that there is a fact question as to whether Aerotek's reason for termination was pretextual.  Accordingly, the Court **DENIES** Aerotek's Motion for Summary Judgment with regard to Montalvo's retaliation claim.

II.     Motion to Strike Jury Demand

In its Motion to Strike Jury Demand, Aerotek argues that Montalvo's jury demand must be stricken because her employment agreement with Aerotek includes an express waiver of the right to trial by jury.  ("Mot. Strike," Dkt. # 17 at 1.)  Montalvo counters that Aerotek's reading of the waiver is overly broad and does not apply to claims of discrimination or retaliation.  ("Mot. Strike Resp.," Dkt. # 20 at 1.)

The waiver provision at issue states: "By executing this agreement, the parties hereto knowingly and willingly waive any right they have under applicable law to a trial by jury in any dispute arising out of or in any way related to this agreement or the issues raised by any such dispute."  (Mot. Strike, Ex. C at 5.)  The provision sits beneath the heading "11. Waiver of Right to Jury Trial."  (Id.)  The other headings in the agreement are:

32

1. Agreement of Employment
2. Term of Employment
3. Covenant Not to Compete
4. Indemnification & Hold Harmless
5. Covenant Not to Divulge Confidential Information
6. Return of Records
7. Remedies; Damages
8. Waiver of Breach
9. Situs of Agreement; Jurisdiction
10. Severability
11. Waiver of Right to Jury Trial
12. Entire Agreement

(Id. at 1–6.)  The agreement does not contain information about Aerotek's

anti-discrimination and anti-retaliation policies; that information is contained in the

Employee Handbook, which has no express provision regarding jury waiver.  (Mot.

Strike Resp., Ex. A.)

Montalvo argues that a dispute arising out of Aerotek's discrimination

and/or retaliation is not a matter arising out of or related to the employment

agreement and therefore is outside the scope of the waiver provision.  (Mot. Strike

Resp. at 2–4.)  Aerotek counters that the Employee Handbook, which contains the

anti-discrimination policies, is how the company established Montalvo's

responsibilities as an employee, which are incorporated into the employment

agreement by the language "[t]he scope of Employee's employment, including

duties, assignment, position and all responsibilities, shall be as established by onsite

from time to time, whether orally or in writing."  ("Mot. Strike Reply," Dkt. # 21 at

2.)  Aerotek also contends that, by challenging her termination as unlawful, she

challenges paragraph two of the employment agreement, which states that the

employee is an at-will employee, whose term of employment will continue until

terminated by either party.  (Id.)  Accordingly, the dispute is a legal question as to

how broadly the Employment Agreement's Jury Waiver provision should be read.

In support of a narrow reading, Montalvo cites to case law that holds

that "[t]he right of jury trial is fundamental, and courts must indulge every

reasonable presumption against waiver."  (Mot. Strike Resp. at 4 (citing Jennings v.

McCormick, 154 F.3d 542, 545 (5th Cir. 1998)).)  In response, Aerotek argues that

courts generally find that broad contractual language applies to a spectrum of

disputes, both in the context of jury waivers and arbitration agreements.  (Mot.

Strike Reply at 3–5.)

The plain language of the jury waiver provision states that the signatory

waives all rights to a trial by jury in any dispute arising out of the agreement.

Because the agreement is a general employment agreement, a dispute related to

unlawful termination, by its nature, arises out of the agreement.  While the

agreement does not specifically mention disputes involving discrimination, it does

not need to: that particular dispute is encompassed in the broad category of disputes

arising out of Montalvo's employment with Aerotek.  Although "[t]he right of jury

trial is fundamental" and "courts [must] indulge every reasonable presumption

against waiver," this is not a circumstance where such a presumption is reasonable,

given the language of the contract.  See Jennings, 154 F.3d at 545 (5th Cir. 1998).

Accordingly, the waiver is valid if Montalvo made that waiver

knowingly and voluntarily:

> In the context of an express jury waiver, the majority of federal courts
> have held that the party seeking enforcement of the waiver has the
> burden of showing that the consent of the party making the waiver
> was knowing, voluntary, and intelligent, but a circuit split exists on
> this issue.  Although the Fifth Circuit has not addressed who carries
> the burden, the Court concludes that the party seeking to enforce the
> waiver has the burden. Regardless of who shoulders the burden, the
> factors used by federal courts to decide whether a waiver was made
> knowingly, voluntarily, and intelligently include: (1) whether there
> was gross disparity in bargaining power between the parties; (2) the
> business or professional experience of the party opposing the waiver;
> (3) whether the opposing party had an opportunity to negotiate
> contract terms; and (4) whether the clause containing the waiver was
> inconspicuous.

RDO Fin. Servs. Co. v. Powell, 191 F. Supp. 2d 811, 813–14 (N.D. Tex. 2002).

Montalvo argues that, because the agreement said that it was the

"'entire agreement,' she believed she was agreeing to what's stated in the

agreements and nothing more." (Mot. Strike Resp. at 3–4.)  Accordingly, she

contends that the waiver was not knowing or voluntary.  (Id.)  Montalvo's argument

is unavailing because it relies on the interpretation of the contract, which the Court

has concluded waived the right to a jury for any dispute arising out of Montalvo's

employment with Aerotek.

Instead, whether Montalvo's waiver was knowing and voluntary depends on the factors identified above: bargaining power, business acumen, negotiability, and conspicuousness of the waiver provision.  These factors weigh in favor of finding that Montalvo knowingly and voluntarily waived her right to jury trial.  The provision was conspicuously set apart from the other provisions in the contract with a heading reading "waiver of right to jury trial" in all capital letters that were bolded and underlined.  (Mot. Strike, Ex. C.)  Montalvo attended college and had sufficient business acumen to serve as an employee with Aerotek for fifteen years.  (Mot. Strike, Ex. A at 14:14–15:17, 98:3–17.)  Merely because she did not negotiate her contract or because there was the inherent disparity in bargaining relationships that is the consequence of employer-employee relations does not render her waiver involuntary.  See Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp., 56 F. Supp. 2d 694, 707, 709 (E.D. La. 1999) (finding that "[s]imply because the[y] did not attempt to negotiate the provisions does not mean that, in fact, the waiver or other terms in the contracts were not negotiable" and that "[t]o invalidate a waiver provision . . . the bargaining differential must be the kind of 'extreme bargaining disadvantage' or 'gross disparity in bargaining position' that occurs only in certain exceptional situations").  Therefore, the factors show that Montalvo's waiver was knowing and voluntary.

Accordingly, the Court finds that Montalvo contractually waived her

36

right to jury trial and **GRANTS** Aerotek's Motion to Strike Jury Demand (Dkt. # 17).

CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion for Summary Judgment (Dkt. # 16) and **GRANTS** Defendant's Motion to Strike Jury Demand (Dkt. # 17).

        **IT IS SO ORDERED.**

        **DATED:** San Antonio, Texas, November 25, 2014.

_____

David Alan Ezra
Senior United States Distict Judge

37